UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBRA GIAMBASTIANI,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF SANTA ROSA, et al.,<br><br>    Defendants. | Case No. 19-cv-02450-VC<br><br>**ORDER GRANTING MOTION TO DISMISS AND GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. Nos. 94, 96 |

The City's motion to dismiss and the County's motion for judgment on the pleadings are both granted. The dismissal is without leave to amend. This order assumes the reader is familiar with the facts, the applicable legal standards, and the arguments made by both parties.

The state court's final ruling on Giambastiani's motion to suppress precludes relitigation of the propriety of much of the officers' conduct. That ruling rejected Giambastiani's claim that the officers' entry into her house violated her Fourth Amendment rights. The ruling also rejected Giambastiani's claim that the arrest lacked probable cause. And the ruling rejected Giambastiani's claim that the officers used excessive force in restraining her to conduct a blood draw. Those same contentions now form the basis of Giambastiani's civil complaint.

All of the elements identified in *Ayers v. City of Richmond*, 895 F.2d 1267, 1271 (9th Cir. 1990), for when a state court judgment precludes a federal civil rights action are met here. In that case, the court held that an order on a motion to suppress was a sufficiently final resolution of the issues for issue preclusion to apply. Neither of the authorities that the plaintiff cites are on point—one is about a different statute specific to the preclusive effect of vehicle code judgments, and the other merely says that a no contest plea alone does not have preclusive effect. Thus, any

claims that rely on issues resolved in the motion to suppress ruling from Giambastiani's criminal case must be dismissed.

Giambastiani has one distinct set of allegations and claims: she asserts that *after* the entry, arrest, and blood draw, there were county officers who violated her First Amendment rights by forcing her to say that she was not suicidal. Those claims are also dismissed.

Both parties agree that the Court may consider not only the factual allegations of the complaint but also the video evidence from the body-worn cameras of the officers involved in the incident. The video is clearly incorporated by reference by the complaint, which repeatedly states that the truth of various allegations will be apparent on video. But the video actually contradicts most of what the plaintiff alleges. Considering the complaint's allegations in combination with the video, none of Giambastiani's claims are plausibly alleged, including the First Amendment claims.

Giambastiani alleges that she was asked if she was suicidal and then threatened by an officer, who told her something like "don't say you're suicidal or you're going to be stripped naked and we're going to make you sleep on the cement floor." Dkt. No. 16 at 9–10. In a prior order, issued before the footage was available, the Court allowed the First Amendment–based retaliation claims to proceed: the alleged statement could plausibly understood as a threat to take adverse action against Giambastiani beyond the steps involved in a typical suicide watch if she engaged in the protected speech of saying that she was suicidal, and it was plausible that the officers might make such a threat to avoid the hassle of putting someone on suicide watch.

But the video shows a different story. As the officers are checking Giambastiani into lockup, they were asking her several questions and she refused to answer. Then they asked, "Are you feeling suicidal right now?" When she did not respond, they said her name, and "hey," to encourage a response. When she still did not respond, an officer said something like, "If you don't answer the questions, we're going to assume you're suicidal, and we strip you but naked, and you go to a cell with just a blanket for your safety." Then when there was still not a response, the officer said, "I know you can hear me" and "If you want to get out of jail, I suggest

2

you answer two questions that I have to ask you." Ultimately, after some more coaxing, Giambastiani did answer the routine booking questions, and indicated that she was not suicidal.

The video clearly contradicts the complaint's theory of retaliation—that Giambastiani was being deterred from indicating that she was suicidal by a threat about what would happen if she said she was. Thus, there is no plausible retaliation claim.

**IT IS SO ORDERED.**

Dated: May 9, 2024

VINCE CHHABRIA
United States District Judge